UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,                    :

             -v.-                            :

                                             :

ALTON DAVIS,                                 :         Indictment No.
        a/k/a "Mr. B,"                                 S1  06 Cr. 911 (WHP)
        a/k/a "D,"
        a/k/a "Basil Bonnick,"              :
        a/k/a "Duane Robinson Knyte,"
        a/k/a "Michael Anthony Morris,"     :
RODERICK GUNN,
        a/k/a "Zappa,"                       :

                        Defendants.          :

------------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALTON DAVIS' MOTION FOR JUDGMENT OF ACQUITTAL

Allan P. Haber
Stephanie M. Carvlin
Counsel for Alton Davis
111 Broadway, Suite 701
New York, New York   10006
212-748-1636

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT**...................................................................................................1

**ARGUMENT**

**STANDARD OF REVIEW**..........................................................................................3

**POINT ONE**

**VENUE**..................................................................................................................3

**THE GOVERNMENT FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE SOUTHERN DISTRICT OF NEW YORK WAS A PROPER VENUE IN WHICH TO PROSECUTE COUNTS TWO, FOUR AND FIVE OF THE INDICTMENT**..........................3

**Count Two – The Elmont Attempted Robbery**..................................................4

**Counts Four and Five -- The §924(c) and §924(j) Counts**...........................9

**POINT TWO**

**THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE CHARGED ROBBERY CONSPIRACY AND ATTEMPTED ROBBERIES HAD THE REQUISITE AFFECT ON INTERSTATE COMMERCE**..............................14

**The Elmont Attempted Robbery**...................................................................16

**The Bronx Robbery**......................................................................................16

**POINT THREE**

**THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE MR. DAVIS CONSPIRED TO DISTRIBUTE MARIJUANA**.........................................................................19

i

**POINT FOUR**

**MR. DAVIS JOINS IN THE RULE 29 AND RULE 33 MOTION FILED BY HIS CO-DEFENDANT RODERICK GUNN TO THE EXTENT THAT THE MOTION IS APPLICABLE AND BENEFICIAL TO MR. DAVIS**……………………………………………………………………………….20

**CONCLUSION**………………………………………………………………………....21

## TABLE OF AUTHORITIES

### Constitutional Provision

U.S. Const. Art. III, §2, cl. 3..................................................................................................3, 14

U.S. Const. Amend. VI......................................................................................................3

### Statutes

18 U.S.C. §2.............................................................................................................1, 2

18 U.S.C. §924(c)(1)(A)(iii)...............................................................................passim

18 U.S.C. §924(j)(1)...........................................................................................passim

18 U.S.C. §1951........................................................................................................1, 14

18 U.S.C. §1951(b)(1)...............................................................................................4

18 U.S.C. §1959......................................................................................................5, n1

18 U.S.C. §3237(a).................................................................................................11, 12

21 U.S.C. §841(a)(1)................................................................................................2

21 U.S.C. §841(b)(1)(A)...........................................................................................2

### Federal Rules

Fed. R. Crim. P. 29 ...................................................................................................3

Fed. R. Crim. P. 29(a) ...............................................................................................3

Fed. R. Crim. P. 29(c) ...............................................................................................2

### Cases

### United States Supreme Court

United States v. Cabrales,
     524 U.S. 1 (1998)...............................................................................4, 7, 13

United States v. Johnson,
     323 U.S. 273 (1944)...............................................................................13

United States v. Rodriguez-Moreno,
    526 U.S. 275 (1999)..................................................................4, 10

**Circuit Courts of Appeals**

United States v. Beech-Nut Nutrition Corp.,
    871 F.2d 1181 (2d Cir. 1989)....................................................8, 9, 12

United States v. Farrish,
    122 F.3d 146 (2d Cir. 1997)...........................................................15

United States v. Gomez,
    580 F.3d 94 (2d Cir. 2009)............................................................15

United States v. McPherson,
    424 F.3d 183 (2d Cir. 2003)............................................................3

United States v. Needham,
    2010 WL 1930247 (2d Cir. May 14, 2010)............................17, 18, n3

United States v. Parkes,
    497 F.3d 220 (2d Cir. 2007)...........................................................15

United States v. Parotta,
    313 F.3d 33 (2d Cir. 2002).............................................................5

United States v. Peterson,
    236 F.3d 848 (7th Cir. 2001).......................................................17

United States v. Robinson,
    275 F.3d 371 (4th Cir. 2001).......................................................11

United States v. Rommy,
    506 F.3d 108 (2d Cir. 2007)..........................................................12

United States v. Saavedra,
    223 F.3d 85 (2d Cir. 2000)...................................................5, 11, 13

United States v. Salmonese,
    352 F.3d 608 (2d Cir. 2003)............................................................3

United States v. Smith,
    452 F.3d 323 (4th Cir. 2006).......................................................11

United States v. Stephenson,
    895 F.2d 867 (2d Cir. 1999).............................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,                          :

        - v.-                                          :

                                                      :

ALTON DAVIS,
    a/k/a "Mr. B,"                                 :          Indictment No.
    a/k/a "D,"                                                S1 06 Cr. 911 (WHP)
    a/k/a "Basil Bonnick,"                         :
    a/k/a "Duane Robinson Knyte,"
    a/k/a "Michael Anthony Morris,"                :
RODERICK GUNN,
    a/k/a "Zappa,"                                 :

                Defendants.        :

-----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF ALTON DAVIS' POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL

### PRELIMINARY STATEMENT

On October 3, 2006, the government filed a sealed indictment that named Alton Davis in eight counts. Count One alleged that Mr. Davis conspired to commit robbery in violation of 18 U.S.C. §1951. Counts Two and Three charged Mr. Davis with attempting to commit and committing robberies in violation of 18 U.S.C. §1951 and §2. Counts Four and Six charged Mr. Davis with discharging a firearm during the charged robbery conspiracy and attempted robberies in violation of 18 U.S.C. 924(c)(1)(A)(iii) and §2. Counts Five and Seven alleged that Mr. Davis caused the death of two person through the use of firearms during the robbery conspiracy and attempted robberies charged in the indictment in

1

violation of 18 U.S.C. §924(j)(1) and §2. The final count of the indictment charged that Mr. Davis and others conspired to distribute more than 1000 kilograms of marijuana in violation of 21 U.S.C. §812, §841(a) and §841(b)(1)(A).

The indictment was superseded on August 16, 2007. The new indictment retained the same charges as to Mr. Davis but added co-defendants Derrilyn Needham, Ronald Knibbs and Roderick Gunn. Each of Mr. Davis' three co-defendants was charged in the robbery conspiracy and marijuana-distribution-conspiracy counts of the Indictment (Counts One and Eight), in one of the robbery counts (Count Three), in one of the counts of discharging a weapon during a crime of violence (Counts Six) and in one of the counts of causing the death of a person through the use of a firearm during a crime of violence (Count Seven). Mr. Gunn and Ms. Needham, but not Mr. Knibbs, also were named in the attempted robbery count (Count Two).

Ms. Needham and Mr. Knibbs entered pleas of guilty before trial. Mr. Davis and co-defendant Roderick Gunn were tried by jury from April 19, 2010, through May 3, 2010. Mr. Davis was convicted on all counts. Mr. Gunn was acquitted of the attempted robbery charge contained in Count Two and was convicted of the other charges against him.

Mr. Davis now submits this Memorandum of Law in support of his previously filed motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 (c) ("Fed. R. Crim. P.").

**ARGUMENT**

**STANDARD OF REVIEW**

A court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In assessing the sufficiency of the government's proof, a reviewing court is required to view the evidence in the light most favorable to the government and to draw all permissible inferences in the government's favor. See United States v. Salmonese, 352 F.3d 608, 618 (2d Cir. 2003). The verdict must be sustained "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. MacPherson, 424 F.3d 183, 187 (2d Cir. 2003) (quoting Jackson v. Virginia, 443 U.S. at 319 (1979)) (emphasis in original) (internal quotation marks omitted).

**POINT ONE**

**VENUE**

**THE GOVERNMENT FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE SOUTHERN DISTRICT OF NEW YORK WAS A PROPER VENUE IN WHICH TO PROSECUTE COUNTS TWO, FOUR AND FIVE OF THE INDICTMENT**

Both statutory and constitutional provisions limit where a defendant may be prosecuted. Pursuant to Fed. R. Crim. P. 18 "the government must prosecute an offense in a district where the offense was committed." Similarly, Article III, §2, cl. 3 mandates that the "Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." Additionally, the Sixth Amendment to the United States Constitution grants a defendant in a criminal case the right "to a speedy and public trial, by an impartial jury of the State and district wherein the

3

crime shall have been committed." As a result, while venue is not an element of a crime, it is a fact the government must prove to a jury by a preponderance of the evidence. The United States Supreme Court has held that in determining where an offense was committed "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999)(citing United States v. Cabrales, 524 U.S. 1, 6-7 (1998). Under this test, the government failed to prove thatCounts Two, Four and Five of the indictment could properly be prosecuted in this District.

### Count Two -- The Elmont Attempted Robbery

Count Two of the indictment charged that Messrs. Davis, Gunn and others attempted to commit a robbery at 194 Locustwood Boulevard, Elmont, New York in violation of 18 U.S.C. §1951. Robbery is defined in 18 U.S.C. §1951(b)(1) in pertinent part as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property...." The government alleged and sought to prove in this case that the object of the Elmont robbery was marijuana or the proceeds of marijuana distribution. Thus, the conduct constituting the offense charged in Count Two was the October 31, 2002, entry into the Laing and DeLeon home, undertaken to steal money or marijuana.

The evidence at trial from cooperating witnesses Robert DeLeon and Derrilyn Needham and from civilian witnesses Grace Garcia, Barton Doricent and

Enetta Brown, demonstrated that the conduct that constituted attempted robbery – entering the house at 194 Locustwood Boulevard and using force in an attempt to obtain property – took place entirely in the Eastern District of New York. Thus, it was that District where the case should have been heard.

The conclusion that the proper venue for the Elmont attempted robbery was the Eastern District of New York is reinforced by United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000). In Saavedra, the Second Circuit addressed the question[1] of where venue properly lies for a charge of attempted robbery. Characterizing the answer as "obvious," the Court concluded that "a trial for armed robbery would be properly venued only in the district where the robbery was committed." Id. at 89. See also United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1999)(for substantive Hobbs Act prosecution, venue is proper in district where alleged act took place or where interstate commerce is affected). The Hobbs Act robbery charged in Count Two was committed – or in this case, attempted – in the Eastern District of New York.

The government did present testimony in this case that acts in preparation for the Elmont robbery took place in the Southern District of New York. This evidence came entirely from Derrilyn Needham. Ms. Needham testified that Roderick Gunn initiated the Elmont robbery. According to Ms. Needham, she had met Mr. Gunn in Jamaica, where they both were from, in 1998. (Tr. at 371.) When Ms. Needham came to New York, Mr. Gunn contacted her. Ultimately they

---

[1]The Court's holding addressed what contacts with a District are sufficient to meet constitutional venue requirements in a prosecution under 18 U.S.C. §1959.

began to commit robberies together. (Tr. at 372.) Sometime in 2002, Mr. Gunn approached Ms. Needham and told her that "a guy named Bobby Sox" – Robert DeLeon – owed a friend of Mr. Gunn money. (Tr. at 373.) Ms. Needham knew Mr. DeLeon because he had dated a friend of hers in Jamaica. Mr. Gunn asked Ms. Needham to take down the license plate number of Mr. DeLeon's car when she next encountered him. Ms. Needham later saw Mr. DeLeon in the Bronx "at 241st and White Plains Road outside a restaurant" driving a vehicle, and she obtained his license plate number there. (Tr. at 376.) Ms. Needham, purportedly at Mr. Gunn's request, gave the plate number to a mutual acquaintance, Mark, who had the access to DMV records. (Tr. at 377.) Mark ran the plate number and came up with the Locustwood Boulevard address from the registration for the vehicle Mr. DeLeon was driving. (Tr. at 378.) Ms. Needham told Mr. Gunn she had obtained the information, and Mr. Gunn sent Donovan Francis, "Brian", to pick it up. (Tr. at 378.)

In a subsequent telephone call, Mr. Gunn admitted to Ms. Needham that "he heard that Bobby Sox, that he was a drug dealer, a big-time drug dealer, and they were thinking of targeting him for robbery." (Tr. at 380.) Ms. Needham also learned that Mr. Gunn planned to do the robbery with Brian, Ronald Knibbs ("Birdie"), and a fourth person she couldn't recall. (Tr. at 381.) Plans for the robbery, including checking out the location, proceeded.

Ms. Needham testified that Mr. Gunn subsequently told her that he was not confident about doing the robbery with that crew. He was looking for someone else to participate. (Tr. at 382.) According to Ms. Needham, she told

her niece, Michelle White, who was involved with Mr. Davis to have Mr. Davis call Mr. Gunn. (Tr. at 382.) Ms. Needham herself had no conversations with Mr. Davis about the robbery before October 31, 2002. (Tr. at 384.) Nevertheless, Ms. Needham testified that on the morning of October 31, 2001, Mr. Davis called her at her residence in the Bronx from "the location in Long Island." (Tr. at 393.) According to Ms. Needham, Mr. Davis told her that neither Mr. Gunn nor Mr. Francis was there. He asked her to find out what was going on. Ms. Needham called Messrs. Gunn and Francis and both provided excuses that made clear they would not be participating in the Elmont robbery. Ms. Needham testified that she called Mr. Davis back and told him what Gunn and Francis had said. (Tr. at 385-86.) Ms. Needham claimed that Mr. Davis asked her to find someone to serve as a lookout. She called her friend Tammy, and Tammy agreed to go to Long Island. (Tr. at 386.)

These acts undertaken by Ms. Needham did not confer venue on the Southern District of New York. The United States Supreme Court made clear in United States v. Cabrales, 524 U.S. at 7-8, that conduct undertaken in a District to prepare to commit a crime, even if the conduct is necessary for the commission of the crime, does not confer venue on that District. In Cabrales, the defendant laundered the proceeds of Missouri narcotics distribution in Florida. The government prosecuted her in Missouri. The United States Supreme Court reversed the conviction, finding that Missouri was not a proper venue in which to prosecute Ms. Cabrales for money laundering. The Missouri narcotics activity did generate the proceeds of specified unlawful activity that was essential to Ms.

Cabrales' commission of the money-laundering offense. However, the Court concluded that the "anterior criminal conduct" that took place in Missouri – the narcotics distribution – did not create venue.

The case law in the Second Circuit is in accord with this reasoning as the Second Circuit's decision in United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1190 (2d Cir. 1989) demonstrates. In Beech-Nut executives of the company were charged in the Eastern District of New York with introducing into interstate commerce apple juice that was adulterated or misbranded. The government's proof at trial demonstrated that the defendants had known that their supplier was providing them with apple-juice concentrate that contained a high percentage of fructose, while the product's label stated that it contained no sugar. The defendant argued pre-trial that the Eastern District was not an appropriate venue. They had operated either from their corporate headquarters in Pennsylvania or from the manufacturing plant that was located in the Northern District of New York. At the trial level the government argued successfully that the Eastern District was nevertheless a proper venue because the defendants' employees telephoned brokers to place orders for the adulterated juice concentrated and mailed confirmations for these orders into the Eastern District of New York. On appeal, the Second Circuit reversed, finding that those "communication were not part of the offense of introducing the offending juice into commerce but were merely prior and preparatory to that offense." Id. at 1190. The Court, affirming long-standing case law, held that "venue is not proper

8

in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense." Id.

Here, the only acts that occurred within the Southern District of New York were preparatory to the Elmont robbery. Thus, the government failed to prove by even the applicable preponderance-of-the-evidence standard that any part of the attempted robbery charged in Count Two – the entry into the Locustwood Boulevard address, the confrontation with Mr. DeLeon, Ms. Laing's murder – took place in the Southern District of New York. Mr. Davis' conviction on this count must be vacated and a judgment of acquittal entered.

### Counts Four and Five -- The §924(c) and §924(j) Counts

The government also failed to prove venue for Counts Four and Five. Counts Four and Five charge Mr. Davis with discharging a gun and with using that gun to kill Stephanie Laing inside her Locustwood Boulevard home in violation of 18 U.S.C. §924(c)(1)(A)(iii), 18 U.S.C. §924(j)(1) and 18 U.S.C. §2. The determination of the appropriate venue for these charges is governed by the United States Supreme Court's decision in United States v. Rodriguez-Moreno. The charges in Rodriguez-Moreno arose from a drug deal gone awry. A New York drug dealer stole 30 kilograms of cocaine that belonged to a Texas drug dealer. The Texas dealer hired Jacinto Rodriguez-Moreno to kidnap the middleman who had brokered the sale and hold him hostage while searching for the New York dealer. Rodriguez-Moreno kidnapped the middleman – Ephrain Avendano – and drove with him from Texas through New Jersey and New York before stopping in Maryland. In Maryland, Rodriguez-Moreno obtained a gun and

threatened to kill Avendano. Before Rodriguez-Moreno was able to carry through with the threat, Avendano escaped.

Rodriguez-Moreno and others were indicted in New Jersey on federal charges, including kidnapping, kidnapping conspiracy and using and carrying a firearm during and in relation to the kidnapping in violation of 18 U.S.C. §924(c)(1). Rodriguez-Moreno moved to dismiss the §924(c) count for lack of venue, arguing that he could be prosecuted on that charge only in Maryland because Maryland was the only place where he had used or carried a firearm during the kidnapping. The District Court denied the motion, and the defendant was convicted. On appeal, the Third Circuit disagreed with the District Court, finding that because §924(c) requires that a firearm be used "during" a crime of violence, a violation of §924(c) occurs only in a district where the use of the weapon and the underlying crime of violence coincide. The United States Supreme Court granted *certiorari*.

Applying the Cabrales test for venue, the Court determined that the conduct constituting a violation of §924(c) is twofold: the commission of the underlying crime of violence and the carrying or use of a gun. Rodriguez-Moreno, 526 U.S. at 280. Rodriguez-Moreno argued, as he had at the Circuit-Court level, that he could be prosecuted only in the venue where conduct satisfying both of those elements took place. However, the Supreme Court had ruled previously that "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." Id. at 281, (citing United States v. Lombardo, 241 U.S. 73, 77 (1916)). The Court concluded

that kidnapping was such an offense. Under 18 U.S.C. §3237(a) an offense against the United States "begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued or completed." Thus although the firearm had been used only in Maryland, the Supreme Court concluded that venue was proper in any jurisdiction where the kidnapping, the crime of violence on which the §924(c) charge was based, occurred, including New Jersey. Accord United States v. Robinson, 275 F.3d 371 (4th Cir. 2001)(where the underlying crime of violence in a prosecution under 18 U.S.C. §924(j) was the continuing offense of carjacking, venue was properly laid in Maryland, even though the shooting took place in the District of Columbia) See also, United States v. Smith, 452 F.3d 323 (4th Cir. 2006)(Where a 924(j) charge was based the defendant's participation in a continuing narcotics-trafficking conspiracy, the prosecution could be brought in any District in which acts related to the drug-trafficking occurred).

Two crimes of violence were alleged in the indictment to support Counts Four and Five: the robbery conspiracy charged in Count One of the indictment and the attempted robbery of the house in Elmont, Long Island. The attempted robbery charged in this case, unlike the kidnapping charged in Moreno-Rodriguez, was not a continuing offense that consisted of distinct parts that occurred in distinct locations. See Saavedra, 223 F.3d at 89 (contrasting unitary nature of armed robbery with continuing offenses that extend over a period of time and occur in widely different localities). Rather, it was a unitary crime.

"When a crime consists of a single, non-continuing act, it is 'committed' in the district where the act is performed." Beech-Nut, 871 F.3d at 1188.

To violate §924(c) and §924(j) a defendant must commit two acts: 1) discharge a firearm, and 2) do so during and in relation to an underlying crime of violence. Under §924(j) a defendant's use of a firearm must also cause the death of a person. As detailed above, the evidence at trial demonstrated that the acts constituting the attempted robbery (the underlying act of violence) took place solely in Elmont, New York. The necessary act for §924(c) or §924(j) charge – the discharge of a firearm – also took place inside 194 Locustwood Boulevard.

The indictment also alleged in the alternative that the overarching robbery conspiracy charged in Count One was a predicate crime of violence for the §924(c) and §924(j) charges. Admittedly, the Second Circuit has found that conspiracies are continuing offense, venue for which is controlled by 18 U.S.C. §3237(a)(venue properly lies in any district in which such offense was begun, continued, or completed.) "Applying this rule to the continuing crime of conspiracy, [the Second Circuit] has held that venue may lie in any district in which the conspiracy was formed or in any district in which a conspirator committed an overt act in furtherance of the criminal scheme." United States v. Rommy, 506 F.3d 108, 119 (2d Cir. 2007). However, the government's inclusion of the robbery conspiracy as one of the crimes of violence that purportedly underlies Counts Four and Five does not change the venue analysis in this case.

In Rodriguez-Moreno, the defendant was charged with kidnapping conspiracy, as well as with the substantive kidnapping offense. Yet, the Supreme

Court did not find the inclusion of the kidnapping conspiracy charge relevant to its analysis. Rather, the Court relied on 1) the continuing nature of the kidnapping that occurred in that case, 2) the fact that the venue where the §924(c) charge was prosecuted was a venue where the hostage had been held during the kidnapping, and 3) the fact that the firearm was possessed while the kidnapping continued.

Additionally, even if 18 U.S.C. §3237(a) could be read to authorize venue for Counts Four and Five, Article III, §2, cl. 3 and the Sixth Amendment impose constitutional limits on where a defendant may be prosecuted. United States v. Saavedra, 223 F.3d at 92-93; United States v. Cabrales, 524 U.S. at 5; United States v Johnson, 323 U.S. 273, 278 (1944). These constitutional requirements would be violated by permitting Mr. Davis' convictions under Counts Four and Five to stand.

The Second Circuit has held that to "determine whether the application of a venue provision in a given prosecution comports with constitutional safeguards, a court should ask whether the criminal act in question bears 'substantial contacts' with any given venue." Saavedra, 223 F.3d at 92-93. Several factors should be considered in making the substantial-contacts analysis: the site of the crime, the elements and nature of the criminal conduct, the place where the effects of the criminal conduct occurred and the suitability of venue for accurate fact finding. Id. An analysis of these factors demonstrates that the conduct charged in Counts Four and Five does not bear substantial contacts with the Southern District of New York. The Laing home was in Eastern District of New

York. The entry into the home occurred in the Eastern District of New York. The gun was discharged in the Eastern District. Ms. Laing died in the Eastern District. As a result, the effects of the criminal conduct were felt in the Eastern District of New York. Indeed, the only contact the conduct alleged in Counts Four and Five of the indictment had with this venue is that some acts in furtherance of the robbery conspiracy purportedly occurred here. This is not sufficient to meet the requirements of the Sixth Amendment and Article III, §2, cl. 3 of the constitution.

Mr. Davis's convictions on Counts Four and Five should be vacated and a judgment of acquittal should enter on these counts.

## POINT TWO

### THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE CHARGED ROBBERY CONSPIRACY AND ROBBERIES HAD THE REQUISITE AFFECT ON INTERSTATE COMMERCE

The government failed to prove beyond a reasonable doubt one of the essential elements for the Hobbs Act violations alleged in Counts One, Two and Three of the indictment – that the crimes charged affected (or would have affected) interstate commerce. As a result, Mr. Davis' convictions on these counts must be vacated, and judgments of acquittal must be entered.

Title 18 United States Code, Section 1951, the Hobbs Act, makes robberies and extortion that "in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce" federal criminal offenses. "The jurisdictional nexus transforms the quintessential state crimes of robbery and extortion into federal crimes." United States v. Parotta, 313 F.3d 33, 37 (2d Cir. 2002). As a result, to sustain a Hobbs Act conviction, the

government must prove beyond a reasonable doubt that "the underlying act affected interstate commerce." United States v. Gomez, 580 F.3d 94, 100 (2d Cir. 2009).

Admittedly, the "jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on commerce. Even a potential or subtle effect on commerce will suffice." United States v. Farrish, 122 F.3d 146, 148 (2d Cir. 1997). However, proving this affect on interstate commerce is an element of a Hobbs Act offense that must be found by a jury by proof beyond a reasonable doubt. United States v. Parkes, 497 F.3d 220, 228 (2d Cir. 2007). The government's proof that the robbery conspiracy charged in Count One, the attempted robbery charged in Count Two and the robbery charged in Count Three had the requisite effect fell below even this threshold.

The government's theory for the Hobbs Act prosecutions was that Mr. Davis and the other participants to the Elmont and Bronx robberies targeted marijuana dealers and that those dealers ran businesses that affected interstate commerce, as the government's summation makes clear:

> And because these are Hobbs Act robberies, the government has to prove that the defendants' actions intentionally to any degree affected interstate commerce.
>
> Now, you heard that the defendants target drug dealers, mostly marijuana dealers. That's a business. That's the drug business. And you know it's an interstate business.

(Tr. at 1690.) However, the evidence at trial did not establish this beyond a reasonable doubt.

15

## The Elmont Attempted Robbery

Derrilyn Needham provided the only evidence as to the motive for the Elmont robbery. According to Ms. Needham, in the initial conversation she had with Mr. Gunn about robbing Mr. DeLeon, Mr. Gunn told her that he heard that Bobby was a "big-time drug dealer," and "they were thinking of targeting him for robbery." (Tr. at 380.) Mr. Gunn did not say during that conversation that the goal of the robbery was to obtain marijuana, as opposed to cash. Ms. Needham described several other conversations she purportedly had with Mr. Gunn before the robbery. In none of that testimony did Ms. Needham claim that the robbers hoped to obtain marijuana or other narcotics from the Elmont robbery.

## The Bronx Robbery

Similarly, in describing the planning of the Bronx robbery, Ms. Needham testified that Mr. Davis told her that his niece Petrianne saw the target of the Bronx robbery, Gary Grey, whom she characterized as a drug dealer, put money into and take money out of a safe in the house. (Tr. at 400.) There was no testimony that Petrianne saw marijuana at Mr. Grey's apartment. Additionally, neither of the civilian witnesses who testified about the Grey robbery – Marcia Johnson and Mark Wright – said that Mr. Grey kept marijuana at the Wickham Avenue address. To the contrary, Mr. Wright, who had been an overnight guest at Mr. Grey's residence on various occasions for extended periods, testified that he never had any indication that Mr. Grey was involved in selling drugs. (Tr. at

1182-83.) More significantly, Ms. Needham admitted that as far as she knew "the [Wickham] robbery was about money, not about marijuana." (Tr. at 714.)

Thus, the government failed to prove beyond a reasonable doubt that Mr. Davis participated in the Elmont or Bronx robberies to obtain narcotics. Rather, the evidence was that the robbers hoped to find and steal money. This was insufficient to demonstrate that the Elmont robbery, if successful, would have had an affect on interstate commerce or that the Bronx robbery did have an affect on interstate commerce, as the Seventh Circuit found in <u>United States v. Peterson,</u> 236 F.3d 848 (7th Cir. 2001).

In <u>Peterson</u>, members of the Latin Kings robbed a marijuana dealer, obtaining $18,000 in cash, 30 pounds of marijuana and three guns. The government argued in part that it had established the requisite federal nexus for Hobbs Act charges by presenting testimony at trial that money was not printed in the state in which the robbery occurred. On appeal, the Circuit Court rejected the notion that the fact that money traveled in interstate commerce would alone be sufficient to meet the jurisdiction element of the Hobbs Act. <u>Id</u>. at 853. Characterizing that view as overly expansive, the Court noted that if the government's analysis were adopted virtually all robberies could be classified as federal crimes. <u>Id</u>.

The Second Circuit's recent decision in <u>United States v. Needham</u>, --- F.3d ---, 2010 WL 1930247 (2d Cir. May 14, 2010), while not directly on point, also supports the conclusion that proof that a robbery targets only money is insufficient without more to demonstrate that the robbery had (or would have

had) an affect on interstate commerce. In Needham,[2] the Second Circuit faced a challenge to the District Court's charge in a Hobbs Act prosecution – appropriate under Circuit precedent at the time it was given – that if the jury found that the participants intended to rob a drug dealer, the jury could presume that the requisite effect on commerce had been proven. The Second Circuit found that the error was prejudicial and reversed the defendants' substantive Hobbs Act convictions, including one in which Ms. Needham and other obtained $600,000 in marijuana proceeds. In so concluding, the Court noted that to sustain the conviction would be "in essence to treat any robbery involving $600,000 or more as a sufficient basis as a matter of law for federal jurisdiction." Id. at *7. The Court declined to do so, finding that the "sheer amount of money, standing alone, does not demonstrate an interstate effect."[3]

Here, as in Peterson and Needham, the government proved no more than that the target of the Elmont and Bronx robberies was money. This was insufficient to meet the commerce-clause element of the Hobbs Act charges. As a result, Mr. Davis' convictions under Counts One, Two and Three must be vacated and a judgment of acquittal entered on those counts.

Counts Four, Five, Six and Seven should also be dismissed. In order to sustain its burden of proof under Counts Four, Five, Six and Seven, the government was required to prove that the offenses charged in those counts –

---

[2]Derrilyn Needham, who testified at Mr. Davis' trial, was the lead appellant in United States v. Needham.
[3]The Court also refused to find that the commerce-clause element had necessarily been satisfied simply because these robberies involved marijuana or marijuana proceeds. Id. at *8.

violations of 18 U.S.C. §924(c) and §924(j) – were committed in the course of or in furtherance of the robbery conspiracy charged in Count One or the robberies charged in Counts Two and Three. Since the government's proof on Counts One, Two and Three was insufficient, *a fortiori* the proof on Counts Four, Five, Six and Seven was insufficient, as well.

## POINT THREE

### THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MR. DAVIS CONSPIRED TO DISTRIBUTE MARIJUANA

Count Eight of the indictment charged that Mr. Davis and others "unlawfully, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States" by distributing and possessing with intent to distribute 1000 kilograms and more of marijuana. The government's theory with respect to this charge was Mr. Davis and others participants in the Elmont and Bronx robberies conspired "to distribute and possess with the intent to distribute … the marijuana that they had hoped to steal from the drug dealers they robbed." (Tr. at 1669.) As detailed above, the government failed to prove beyond a reasonable doubt that marijuana was the object of the two charged robberies. As a result, the government's proof that Mr. Davis conspired to distribute that drug, as charged in the indictment, was insufficient.

19

## POINT FOUR

## MR. DAVIS JOINS IN THE RULE 29 AND RULE 33 MOTION FILED BY HIS CO-DEFENDANT RODERICK GUNN TO THE EXTENT THAT THE MOTION IS APPLICABLE AND BENEFICIAL TO MR. DAVIS

Mr. Davis adopts by references any arguments Mr. Gunn makes in his Rule 29 and Rule 33 motion to the extent that the arguments and the relief sought are applicable and beneficial to Mr. Davis.

## CONCLUSION

For all the reasons stated herein and in the accompanying Affidavit and Notice of Motion, Mr. Davis moves the Court to:

1. Vacate his convictions under all counts and dismiss the indictment;

2. Permit him to join in his co-defendant Roderick Gunn's motions, and

3. Grant whatever other relief the Court deems just and proper.

Dated: June 4, 2010

Respectfully submitted,

Stephanie M. Carvlin
Allan P. Haber
Counsel for Alton Davis

cc (via ECF): Assistant U.S. Attorney John O'Connell
Assistant U.S. Attorney Jennifer Burns
All co-counsel