LAW OFFICES OF
# ALLAN P. HABER, ESQ.
111 Broadway, Suite 701
New York, New York 10006

OF COUNSEL
STEPHANIE CARVLIN, ESQ.
GEORGES G. LEDERMAN, ESQ.

TELEPHONE 212-233-4411
FACSIMILE: 212-374-1506
E-MAIL: allanhaber@aol.com

August 13, 2010

Honorable William H. Pauley
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York   10007

Re:   United States v. Alton Davis, et al.
      06 Cr. 911(WHP)

Dear Judge Pauley:

Alton Davis, one of the defendants in the above-captioned case, is scheduled to be sentenced by this Court on August 20, 2010. I write to provide Your Honor with information that is relevant to your sentencing decision.[1]

## BACKGROUND

On April 4, 2007, Alton Davis was arraigned and pled not guilty to an eight count indictment, 06 Cr. 911, that charged him as follows: COUNT ONE - Hobbs Act Conspiracy, 18 U.S.C. §1951; COUNT TWO – Attempted Hobbs Act Robbery, 18 U.S.C. §1951; COUNT THREE – Attempted Hobbs Act Robbery, 18 U.S.C. §1951; COUNT FOUR – Weapon discharged in Course of Violent Crime on October 31, 2001, 18 U.S.C. §924(c)(1)(A)(iii); COUNT FIVE – Cause the Death of Another During a Crime of Violence on October 31, 2002, 18 U.S.C. §924(j); COUNT SIX - Weapon Discharged in Course of Violent Crime on January 21, 2003, 18 U.S.C. §924(c)(1)(A)(iii); COUNT SEVEN - Caused the Death of Another During a Crime of Violence on January 21, 2003, 18 U.S.C. §924(j); COUNT EIGHT - conspiracy to distribute more than 1000 kilograms of marijuana, 21 U.S.C. §841(a)(1) and (b)(1)(A).

---

[1] Alton Davis' true name is Basil Bonnick. However, he was indicted under the name of Alton Davis.

On August 16, 2007, a superseding indictment S1 07 Cr. 911, was filed adding Derrilyn Needham (Counts One-Three, Six, Seven, Eight); Ronald Knibbs (Counts One, Three, Six, Seven, Eight) and Roderick Gunn (Counts One-Three, Six, Seven, Eight) as co-defendants. Mr. Davis was arraigned on the superseding indictment on October 11, 2007, before the Honorable Leonard B. Sand.

On April 19, 2010, Alton Davis and Roderick Gunn, proceeded to trial before Your Honor. On May 3, 2010, Mr. Davis was convicted on all eight counts. However, he was found guilty of a lesser-included amount of marijuana on Count Eight of the indictment.[2]

## THE §3553(a) FACTORS

Following the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007)(District Court may impose a sentence that varies from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors); *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007)("extraordinary circumstances" not required to impose non-guideline sentence); *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456 (2007)(while appellate court may apply presumption that Guideline sentence imposed by district court was reasonable, sentencing court may not presume that the Guidelines should control), and the Second Circuit's interpretation of *Booker* in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), this Court's sentencing decision must be governed by the factors listed in 18 U.S.C. §3553(a). Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guidelines range and any applicable Guidelines Policy Statements, the need to avoid sentencing disparities and the need to provide restitution to the victim.

This Court must consider all of the §3553(a) factors to derive a sentence that is "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

---

[2]Mr. Davis was found guilty of possessing with the intent to distribute 100 kilograms or more but less than 1000 kilograms or more of marijuana.

2

## 1. The Guidelines Range and Policy Statements

While this Court is no longer bound to impose a Guidelines sentence, the Second Circuit has directed District Courts to "consider" the Guidelines, and in "order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range." *Crosby*, 397 F.3d at 111. Thus, one step in deciding what sentence is appropriate for Mr. Davis is to calculate the Guideline range for his offense. However, there is no presumption that the Guidelines provide the "correct" sentence, and this Court may vary from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors. *See Kimbrough v. United States*, 128 S. Ct. at 575.

The preliminary draft of the Probation Report, hereinafter the "PSR," was sent to counsel for comment on July 19, 2010. A final report with recommendations for sentence was sent to counsel on August 9, 2010. Although we concur with much of the report we contest certain legal conclusions made by Probation in the final report regarding consecutive sentences for Counts Four and Six (discharge of a weapon during a crime of violence).

Because Mr. Davis stands convicted of eight charges, Probation conducted a grouping analysis. The PSR divides Mr. Davis' convictions into two groups. Group One encompasses conduct related to the Elmont robbery-homicide -- Counts One (conspiracy), Two (Hobbs Act robbery) and Five (causing death during a crime of violence) of the indictment. Group Two encompasses conduct related to the Bronx robbery-homicide -- Counts One (conspiracy), Three (Hobbs Act robbery) and Seven (causing death during a crime of violence). Because Groups One and Two result in offense levels of 43 and Mr. Davis' conviction under Count Eight would have yielded a Guideline range more than nine levels lower, Probation does not include Mr. Davis' conviction under Count Eight in its Guidelines calculation. (PSR at ¶ 70.) Probation also does not include Mr. Davis' convictions under 18 U.S.C. §924(c) (Counts Four and Six) in its Guidelines calculations, as those counts carry a statutory minimum that generally must run consecutively to any other sentence imposed. Multiple count adjustments, mandated by U.S.S.G. §3D1.4, add two additional units to the calculation, resulting in a Total Offense Level of 45 for both Groups One and Two. Mr. Davis does not object to this Guidelines calculation.

In dealing with Mr. Davis' §924(c) convictions under Counts Four and Six Probation properly determines that Mr. Davis is <u>not subject</u> to the mandatory consecutive sentence of imprisonment under Count Four, pursuant to *United States v. Whitley*, 529 F.3d 150 (2d Cir. 2008) and *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009). However, the report also concludes that Mr. Davis

should receive a 25-year, consecutive time of incarceration for his conviction under Count Six.[3] (PSR at ¶ 154.) This is incorrect.

When a defendant is convicted of both a greater charge and a lesser-included offense, a Court may impose a sentence on the greater offense only. *Rutledge v. United States*, 517 U.S. 294, 306-07 (1996). In *United States v. Parkes*, 497 F.3d 220, 234 (2d Cir. 2007), the Second Circuit made clear that a violation of 18 U.S.C. §924(c) is a lesser-included offense of a violation of 18 U.S.C. §924(j). Parkes, like Mr. Davis, was convicted *inter alia* of violating both subsections of 18 U.S.C. §924.[4] The government conceded that the District Court erred by imposing sentences on both. The Court of Appeals agreed, and remanded the case for re-sentencing. Thus, the sentence that Mr. Davis receives for his convictions under 18 U.S.C. §924(j) (Counts Five and Seven) governs. No consecutive sentence – indeed no additional sentence at all – may be imposed on his convictions under 18 U.S.C. §924(c).

2. <u>The Nature and Circumstances of the Offense</u>

    a. <u>The Long Island Attempted Robbery and Murder</u>

The government offered proof at trial that Alton Davis, Derrilyn Needham and others planned and ultimately attempted to rob Robert DeLeon, a marijuana dealer, at his home at 194 Locustwood Boulevard, Elmont, New York, on October 31, 2002. Mr. DeLeon's mother, Witnesses testified at trial that during the robbery attempt Mr. Davis shot Stephanie Laing, Mr. DeLeon's common-law wife. Ms. Laing died from her injuries.

    b. <u>The Bronx Attempted Robbery and Murder</u>

The government also introduced testimony that Mr. Davis, Derrilyn Needham, Roderick Gunn, Ronald Knibbs and others attempted to rob Gary Grey, a marijuana dealer, in Bronx County New York. During the robbery attempt Mr. Grey was shot and killed. A witness, Mark Wright, testified that Mr. Davis was one of the perpetrators of the attempted robbery. Other evidence was offered to show that Mr. Davis fired the shots that killed Mr. Grey.

---

[3] Pursuant to 18 U.S.C. §924(c) a second or subsequent §924(c) conviction for weapon discharge carries a mandatory minimum penalty of 25 years. The United States Supreme Court has held that this enhancement applies in cases (such as this case) in which the "second or subsequent" conviction results from charges contained within the same indictment. *United States v. Deal*, 508 U.S. 129 (1993).

[4] The *Parkes* opinion refers to 924(i). Section §924(i) has been renumbered §924(j).

4

Gary Grey, a man in his mid-forties when he was murdered, had seduced Mr. Davis' 14-year-old niece. She was a troubled girl who fell easy prey to the lures of an older man with money. Mr. Grey's sexual relationship with her constituted statutory rape. Additionally, Mr. Grey was a marijuana dealer. He carried a weapon. Indeed, he was killed with his own gun. Of course, these facts do not justify homicide. They are not irrelevant, however. Mr. Grey was targeted because of his relationship with Mr. Davis' niece. This is part of the nature and circumstance of the offense.

### 3. Mr. Davis' History and Characteristics

#### a. Mr. Davis' Background

As the PSR indicates, Mr. Davis was raised in an extremely violent -- virtually inhumane -- manner. As a child he was subject to frequent physical and mental abuse at the hands of his father, Lancelot Bonnick. Lancelot was a brutal man with no restraint and no government or laws that he felt obligated to obey. While he was married to Mr. Davis' mother May Bonnick, Lancelot lived most of the time in the country with his second "wife," Gloria Salmon. This was a fortuity that probably saved Mr. Davis and his sisters Rose and Dawn's lives, given that whenever he was home Lancelot beat his children viciously. As the only male child in the household, with an absentee father who came around when it suited him, Mr. Davis also became the sole protector of his sisters. This had consequence for his psychological development as well. He learned early in life that the only way to survive is by being stronger, more violent than those around him.

During the mitigation phase, Mr. Davis' defense team prepared a videotape that documents the level and nature of the abuse he experienced when growing up. As part of this sentencing submission, counsel for Mr. Davis includes an edited version of the original mitigation video for this Court's review. In addition, to facilitate the Court's consideration of the tape -- many of the speakers have heavy Jamaican accents -- we are providing a transcript of the conversations.

Virtually all the people interviewed -- family members, neighbors, friends at the time -- confirm Lancelot Bonnick's violence. One example from his paramour Gloria Salmon is worth highlighting here: "He was very abusive...I got pregnant seven times and out of the seven times only two survive cause he always beat me, and the baby them always died." Canessa Bonnick, Mr. Davis' half sister (Ms. Salmon is her mother), describes the children's upbringing as "a war zone." Olive Davy, one of Mr. Davis' aunts, notes that when Lancelot "could not beat on my sister anymore, Basil was his next victim. He would beat on him constantly, even for no reason." Aunt Phyllis remembers that Lancelot "had a hatred for Basil." Mr. Davis' sister Rose describes an incident in which Lancelot went to

5

Basil's school because he was acting out. Lancelot beat Mr. Davis "to a pulp" in front of the other students and the nuns who ran the school.

The 15-minute video is filled with similar accounts of the culture of violence that Mr. Davis grew up in. Of course, Mr. Davis' background does not justify the conduct he was convicted of committing. However, this is information that this Court should not ignore in determining the appropriate sentence to impose.

One other aspect of Mr. Davis' background should be considered by this Court. Mr. Davis currently suffers from bladder cancer. While Mr. Davis is receiving treatment from the Bureau of Prisons, his illness is painful and debilitating. It is reasonable to conclude that his life expectancy is shorter as a result.

### b. Mr. Davis' Humanity

Despite the conduct that Mr. Davis was convicted of committing, there is substantial evidence that he is capable of great humanity. Those who know the other side of Alton Davis support this view. His sisters, his former employer and the mother of his children have good things to say about him. His aunt Olive remembers Mr. Davis visiting her in Brooklyn with four of his children. He brought them to meet her because he wanted them to know his family. Beverly Fagan, Mr. Davis' former employer and landlady recounts how Mr. Davis would take his children out to the park and to the movies. She calls him a "very good daddy" and notes that "people as whole just love him, the way his is." Keith, Mr. Davis' co-worker at Bev Fagan's restaurant, remembers how Mr. Davis went out of his way to make sure that all his children got together so they would have a relationship with each other. Rene Ford, the mother of two of Mr. Davis' children, Madison and Blake, describes him as a good father and as a man who encouraged her to continue her education. His sisters Rose and Dawn both note Mr. Davis' "big heart" and willingness to do what he could to help them.

### 4. The Kinds of Sentences Available

Mr. Davis' conviction for being involved in a marijuana conspiracy that distributed in excess of 100 kilograms of marijuana under 21 U.S.C. §841(b)(1)(B) carries a five-year mandatory minimum term of incarceration. Mr. Davis faces a maximum term of incarceration of life.

## THE APPROPRIATE SENTENCE

Section 3553(a) requires this Court to consider all the factors reviewed above and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the

public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment.

Admittedly, the crimes charged in this case were extraordinarily serious, and testimony at trial demonstrates that the crimes were committed in a violent fashion. Undoubtedly, this Court will conclude that a substantial sentence is warranted. It is respectfully submitted, however, that a sentence of life imprisonment is not. Mitigating factors about Mr. Davis' background, his close and ongoing relationship with his children and his family suggest that a sentence of 30 years, which is an extraordinarily long sentence for a forty-four year-old man who has cancer, is sufficient punishment. This substantial sentence is also sufficient to afford adequate general and specific deterrence and to promote respect for the law.

Finally, Mr. Davis could benefit from psychological, educational and vocational training while he is incarcerated.

## CREDIT FOR TIME SERVED IN FEDERAL CUSTODY

Mr. Davis was taken into federal custody by Special Agent Zamaloff on March 28, 2007 while incarcerated at Riker's Island on an unrelated charge. He has remained in federal custody since that time. According to his state lawyer it is highly unlikely that New York State will pursue the charges currently pending against him in State court. Under the circumstances it would be appropriate to credit Mr. Davis with approximately 41 months of federal incarceration while he was awaiting trial on this case.

## CONCLUSION

In the circumstances of this case, the goal of "just punishment" can best be satisfied by imposing a term of incarceration not to exceed 30 years. It is respectfully submitted that any term of incarceration greater than 30 years, with credit for time served in federal custody from March 28, 2007 until his sentencing on August 20, 2010, would constitute a sentence that is greater than necessary to meet the goals delineated in 18 U.S. C. §3553(a).

Respectfully submitted,

*Allan P. Haber*

Allan P. Haber
Stephanie Carvlin
Counsel for Alton Davis

cc: AUSA's John O'Donnell and Jennifer Burns
    Counsel for Roderick Gunn